## William B. Clark and another v. Isaac Cox.

*Exclusion of evidence: Custom: Charge to the jury: Error cured.* A ruling excluding as immaterial, evidence offered to prove a custom, if erroneous, is held cured by a charge to the jury recognizing a general custom of the character sought to be proved, under limitations as favorable to the party complaining of the ruling as he was entitled to claim.

*Reasonable expenditures for family: Income: Property.* In determining what is a reasonable expenditure of money for one's family, the income, or the capacity to earn or produce one, is fully as important a subject of inquiry as the amount of property possessed.

*Husband and wife: Wife's purchases: Reasonable expenditures: Evidence: Style of living: Associates.* In an action involving the right and authority of a married woman to bind her husband by purchases made in his name without his knowledge or express assent, evidence of the style of living and expenditure in the circle to which he introduces her, and where he expects her to find her intimates and associates, is pertinent.

*Married women: Goods purchased on husband's credit: Necessaries.* A husband who suitably supplies his wife with necessaries, or with the money to purchase them, will not be held liable, on the basis of a presumption of authority or of an implied agency, for goods purchased by her on his credit, without his knowledge or consent, of one with whom he had had no previous dealings, though the goods be of the quality of "necessaries."

*Goods sold to wife on credit of husband: Necessity.* A tradesman supplies goods to the wife at his peril when the husband is guilty of no neglect of duty in the premises, and when, consequently, there can be no necessity for her purchasing on his credit at all.

*Husband and wife: Wife's purchases: Evidence.* In an action to recover of the husband for goods sold on his credit to the wife, evidence that she

CLARK *v.* COX.

made other purchases in his name of other dealers at about the same time is immaterial; but its admission could not have injured the plaintiffs where, upon the whole evidence, it is apparent they were not entitled to recover.

*Heard April 13. Decided June 15.*

Error to Kalamazoo Circuit.

*May, Buck & Powers,* for plaintiffs in error.

*Edwards & Sherwood,* for defendant in error.

COOLEY, J:

This case involves questions of the right and authority of a married woman to bind her husband by purchases made in his name without his knowledge or express assent.

The evidence tended to show that the defendant was married September 12th, 1871. He had a dwelling where he was keeping house previous to his marriage, and to this he took his wife. His previous house-keeper remained with them. Before the marriage he had supplied his wife with a small amount of money for clothing and jewelry, and did the same afterwards, refusing no request. In the latter part of November the wife went to the store of the plaintiffs and purchased a bill of goods in the name of defendant, amounting to about two hundred dollars. Almost all the articles in the bill were suitable for female apparel. Defendant was not in the habit of buying goods on credit, nor was he a customer at this store. A number of years previously he had been solicited to trade at this store, but in response to the solicitation had declared his determination not to do so. When defendant's wife applied to buy the goods, no inquiry was made by plaintiffs, except regarding the husband's responsibility, and being satisfied with this, the sale was made. When the bill was presented to defendant, he refused to pay it, on the ground that his wife's necessaries were fully supplied, and he had not assented to the use of his credit by her. This suit was then brought.

The evidence on both sides tended to show that defend-

ant was worth about twenty thousand dollars. He had been a farmer, accustomed to live with economy, and his wife previous to the marriage had earned her own support as a milliner. The plaintiffs offered to show on the trial a custom in the community where the parties resided, for the wife to purchase articles of the nature of those included in the bill. The circuit judge excluded the evidence as immaterial, and of this the plaintiffs complain. If this was error, it did not injure them, as the judge subsequently in his charge recognized a general custom to that effect, under limitations which we think make the rule he laid down as favorable to the plaintiffs as they are entitled to claim.

The defendant, under objection from plaintiffs' counsel, was permitted to show that of his property about four thousand dollars in value consisted of the house and lot where he lived; that his whole income was only about seven hundred dollars a year, from which he paid his taxes; that his health was poor, and he was not in condition to labor at all; that his wife made other considerable purchases of clothing at other stores on his credit at about the same time with the one in controversy, and soon after left him, and that the provision he made for his family was similar to that made by his friends and family associates for theirs.

The evidence being in, the court was requested by the respective parties to give a number of specific instructions to the jury, but preferring to give a connected charge, he declined all the requests, and gave the following, which covers the ground of them all:

"Gentlemen of the jury:—This is an action of assumpsit, brought by the plaintiffs to recover of the defendant the price and value of certain goods purchased by the wife of the defendant, of the plaintiffs. The defendant does not attempt to controvert the testimony offered by the plaintiffs, tending to show the sale and delivery of the goods or the value thereof. The principal question involved is, whether under all the circumstances of the case, assuming the goods to have been sold as claimed, the defendant is legally liable.

CLARK *v.* COX.

"We have found the question thus presented somewhat difficult of solution. Of course I refer to the rule of law to be applied to the facts. The difficulty, and at least seeming conflict, in the authorities cited by the counsel, arises out of the different views taken as to the husband's liability for goods furnished the wife. On the one hand, it is contended that the liability is predicated on the ground that the wife is the authorized agent of the husband to purchase such articles as are denominated necessaries, for the use of the family, and that this authority warrants any merchant in furnishing such goods as are suitable and reasonable in quantity and quality for that purpose, notwithstanding the wants of the wife and family may at the time be fully supplied. On the other hand, it is contended that the husband's liability springs from his duty created by virtue of his marital and family relations; and that it logically follows, if his duty is fully discharged in this respect, there can be no ground for recovery, and the ground failing, that the right to recover must consequently fail.

"We have endeavored to weigh the authorities cited, and have considered, with as much care and attention as we could, the arguments and reasoning of counsel.

"While we recognize the correctness of many of the requests of counsel, it is deemed unnecessary, in view of the conclusion arrived at, to repeat them, and therefore decline to give any portions of them.

"The conclusions at which we have arrived upon the law, as indicated by the authorities, as well as the reason for the rules indicated, may be briefly stated as follows:

"A wife living with her husband, with respect to certain contracts, namely: such as relate to necessaries for her husband's family, may be regarded as his agent, possessed of a general and presumed authority, arising from the duty and liability of the husband to provide his wife and family with necessaries; and the presumption that he assents to arrangements for their benefit, of which he cannot but be acquainted. The contract is the agreement of the husband by the inter-

vention of the wife. The agency springs from the duty of the husband, growing out of the marriage relation and cohabitation. The husband has taken upon himself, by virtue of this relation, a duty,—having contracted marriage with the woman and entered into that relation, he has thereby become in point of law liable for her maintenance, as well as that of their family, and if he fails to provide for that maintenance, except under certain circumstances, under which he would be justified in withholding it, she has authority to pledge his credit to procure it.

"And when I speak of certain circumstances under which he would be justified in withholding it, I might illustrate by suggesting that if the wife should voluntarily leave his bed and board and refuse to discharge her marital relations, that would be an illustration.

"When a husband refuses to provide for his wife necessaries, he gives her a credit with the whole community, and he gives her a credit because the law, as well as the marriage contract, requires that he support his wife and his offspring. The purpose and comfort of married and domestic life would be defeated or obstructed if the wife had not a general authority to purchase such articles as are necessary for the use of the family; and the necessity is not to be a strict one; it is not to be guaged or governed by any fine rule that would warrant a man in being penurious, and in requiring his family to deprive themselves of all the luxuries and comforts of life, but includes whatever things are unquestionably proper to be used in the family, and suited to the manner of life which the husband authorizes; and therefore the law clothes her with this authority. So whatever she purchases for herself or family, the husband is liable for, provided it be such in quality, and no more in quantity than is suitable for the station and means of the husband and the manner in which he permits her to live. And I might say as to the rule of law, that even though a man may not actually have the means to support a wife as he has permitted and encouraged her to live in society, nevertheless

CLARK *v.* COX.

if he permit and encourage her to live in society in a style which his means will not warrant, he thereby gives credit, gives the world to understand that he is able and willing to support her in the style which she has assumed and to which he has assented.

"But beyond this she has no authority; her contracts for other things in his name are wholly void.

"Of course I speak of contracts made for the family, and made not in her own name: contracts made in his name, as stated.

"In every case it is a question for the jury to determine, under the instruction of the court, whether the articles supplied to the wife, and for which it is sought to make the husband liable on his implied authority to her, are or are not necessaries in this sense.

"In other words, you might say it is a question for the jury to say whether, under the circumstances, it is proper and right that she should have the goods which she has purchased, and the husband may show that the articles are not necessaries, by proof that the wife had previously sufficiently supplied herself elsewhere, or been supplied by him.

"And when I say sufficiently, you must bear in mind, of course, the qualification already indicated by the court. We do not mean by using the word sufficiently, just barely sufficient to eke out an existence, to keep soul and body together, and to protect her from the inclemency of the weather; but when we use the word sufficient in this connection, it means that the provision made shall be such as to minister to her comforts and necessaries, and may even extend to luxuries suitable for her station and condition in life. If a husband neglects to furnish his wife with articles of necessity, suitable to his condition in life, the wife may procure them of others, and the husband will be liable for the payment of them.

"This liability does not arise, however, unless it can be shown that the husband has failed in the performance of

32 MICH.—27.

this duty, or has recognized such contracts by the wife as binding upon him.

"I have no doubt at all but that if a wife goes to an establishment and procures goods which are not at all necessary or suitable to her rank and condition, if the husband sees her wearing them and makes no objection to it, and thereby acquiesces in it, he ratifies the contract, and would be liable in such case. I don't mean that it would be the duty of the husband, if the wife should go and get an expensive lot of jewelry, that it would be necessary for him in order to discharge himself of liability, to take the articles and throw them into the street; but I mean that his conduct and his actions in relation to them must be such as to raise the implication that he assented to it, or that he approved of it, and his approval or his approbation, whatever the act might be that would indicate that approbation, would be deemed a ratification of the contract, though not a necessary, and in that case he would be bound, I think, for it.

"*Prima facie* the husband—and when I say *prima facie* I mean simply on the face, unopposed by other evidence—the husband is liable for the class or kind of goods termed necessaries.

"But the defendant may be permitted to show in defense that the wife or family was already supplied, even when no notice of prohibition of sale is given to the plaintiffs, and if this fact appear, the plaintiffs cannot recover.

"If notice of such prohibition appear to have been given, the plaintiff in order to recover must show affirmatively that the goods sold were actually necessaries, and that she was not already supplied.

"We speak of this as a well settled principle of law, not that it is specially applicable in this case, because there does not appear to be any positive prohibition on the part of Mr. Cox against the sale of goods to his wife in this case. There has been some testimony, I believe, given in relation to an

interview had many years ago between Mr. Cox and Mr. Clark in regard to the sale of goods, but even if you should believe what Mr. Cox recites in regard to this, I do not think as matter of law you would be warranted in construing it as a positive prohibition towards his wife.

"A husband who supplies his wife with necessaries in her degree, is not liable for debts contracted by her without his previous authority or subsequent sanction.

"In this connection I repeat, that the term "necessaries" is not confined merely to what is requisite barely to support life, but includes many of the conveniences of refined society. It is a relative term, which must be applied to the circumstances and condition of the parties. Ornaments and superfluities of dress, such as are usually worn by those in the parties' rank and station in life, have been classed among necessaries, and such we recognize the law to be.

"Now, gentlemen, applying the foregoing rules of law as indicated by the court, we submit to you the question as to whether or not these goods, or any portion of them, were necessaries. If so, the plaintiffs should recover to that extent. If not, the defendant is entitled to your verdict."

*Question by a juror:*—"Did your Honor charge that if according to the testimony the defendant was abundantly supplied, we should find for plaintiffs?"

*By the Court:*—"I advised you in substance, that if you find the wife of the defendant was abundantly supplied with all necessaries suitable and proper under the circumstances, and in view of the rank and condition of herself and family, then the plaintiffs could not recover."

Under these instructions the jury returned a verdict for the defendant.

If the liability of the defendant depends on a determination of the question whether the articles purchased of the plaintiffs were or were not articles needful and proper to be furnished by defendant to his wife, in view of his condition in life, and of the society in which he moved, then we can see no objection to the evidence showing what his income

was, his physical condition, and the manner of life among his friends and intimate associates. The question, what is needful and proper to be supplied as clothing to one's family, cannot be determined on a consideration solely of the amount of his property. There is and can be no absolute standard of reasonable expenditure in these cases. A man with twenty thousand dollars worth of property, and possessed of ordinary·health, physical vigor, and mental power and training, may be able to live with reasonable prudence in a style and with an expenditure that would be ruinous to a man with equal means but wholly incapable, from physical or mental infirmities or defects, of employing himself in business or labor. The expenditure that would be reasonable and proper in the one case, would be absolute folly and fatuity in the other, because with the one it would be consistent with steady and perhaps increasing prosperity, while with the other, an expenditure constantly making inroads upon the capital must in time annihilate it. To leave out of view the income, or the capacity to earn or produce one, when the question is what would be a reasonable expenditure for one's family, is to omit the most important factor in the problem; and it is noticeable that in *Manby v. Scott,* *1 Sid., 109,* a leading case on this subject, the income, instead of the amount of property, is treated as the proper measure of one's estate. Nor can the style of living and expenditure in the circle to which the husband introduces his wife, and where he expects her to find her intimates and associates, be unimportant. It is a reasonable presumption that both parties expect that she will conform to the habits and usages of that circle, and their habits of living and expenditure may fairly be taken as a standard by which to judge of those by the wife where apparently he has left her to make her own purchases.

The points in difference between the parties in this case may be stated thus: The plaintiffs maintain that the wife is presumably the agent of the husband in the purchase of her own apparel, and of such articles of use and comfort

for the family as are usually purchased by the wife rather than the husband; and that while husband and wife are living together, a dealer who has no knowledge of any express limitations imposed by the husband on the wife's authority to make such purchases, may safely rely upon the legal presumption of her authority, and hold the husband liable on her purchases. The defendant, on the other hand, insists that the presumption goes no farther than this: that if the husband does not himself procure for her the necessary articles suitable to her and his condition, or furnish her with money to procure them for herself, it is presumed he authorizes her to purchase them on his credit; in other words, that any presumption that he authorizes her to employ his credit in the purchase of necessaries is rebutted by his purchasing them himself or giving her money for the purpose. And this was the view taken by the circuit judge.

There can be no doubt, we think, that the authorities fully sustain the ruling of the court below. In *Manby v. Scott*, already referred to, a finding that goods purchased by the wife were "necessaries," was treated by the judges as not being equivalent to a finding that there was a necessity for their purchase; and in *Seaton v. Benedict, 5 Bing., 28, Best, Ch. J.*, delivering the opinion of the court, says: "A husband is only liable for debts contracted by his wife on the assumption that she acts as his agent. If he omits to furnish her with necessaries, he makes her impliedly his agent to purchase them. If he supplies her properly, she is not his agent for the purchase of an article, unless he see her wear it without disapprobation." That case was singularly like the present in the facts, and the conclusion was, that there was "no pretense for supporting a verdict for the plaintiff." *Montague v. Benedict, 3 B. & C., 631*, lays down a similar doctrine, and it is declared that a tradesman supplies goods to the wife at his peril, when the husband is guilty of no neglect of duty in the premises, and when, consequently, there can be no necessity for her purchasing at all. That this is the present doctrine of the English courts, is abundantly shown by *Holt v. Brien, 4 B.*

& *Ald.*, *452*; *Reneaux v. Teakle*, 8 *Exch.*, *680*; *Reid v. Teakle*, 13 *C. B.*, *627*; *Jolly v. Rees*, 15 *C. B.*, *N. S.*, *628*; *Richardson v. Dubois*, *L. R.*, *5 Q. B.*, *51*. The decisions in this country are in entire accord with these.—*Mott v. Comstock*, 8 *Wend.*, *544*; *Kimball v. Keyes*, 11 *Wend.*, *33*; *Baker v. Barney*, 8 *Johns.*, *72*; *Cromwell v. Benjamin*, *41 Barb.*, *558*; *Cany v. Patton*, 2 *Ashm.*, *140*; *Furlong v. Hysom*, 35 *Me.*, *332*; *Rea v. Durkee*, 25 *Ill.*, *503*.

These authorities appear to leave nothing to be said by us. The defendant was guilty of no default or neglect of duty. He saw fit to deal exclusively for cash, and he had a right so to do. The plaintiffs, without making any inquiry, have seen fit to sell to his wife a bill of goods on the assumption that they were necessaries, and that consequently she had authority to make him chargeable for the purchase. Under some circumstances they might have been necessaries, but in the particular case they were not so, because her necessities were already supplied, and consequently the assumption on which the plaintiffs acted has proved unfounded. The wife had no express authority from the husband to make the purchase; there was no implied authority arising from previous dealings, and any that might spring from the husband's neglect of duty in furnishing a reasonable support, is disproved. It follows that the husband was not liable. We think the instructions given by the circuit judge were a very clear and accurate statement of the rules of law applicable to the case.

The evidence of purchases made by the wife of other dealers at about the same time was immaterial and incompetent, but it could not have injured the plaintiffs. No attempt was made to disprove the *prima facie* case made out for the defendant, and upon that case his right to the verdict was unquestionable.

The judgment must be affirmed, with costs.

GRAVES, CH. J., and CAMPBELL, J., concurred.

Only three judges sat in this case.